## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**THE MIAMI VALLEY FAIR**
**HOUSING CENTER, INC.**
**505 RIVERSIDE DRIVE**
**DAYTON, OHIO 45405**

      **Plaintiff,**

**v.**

**CLOVER GROUP, INC.**
**ATTN: Michael Joseph, CEO**
**348 HARRIS HILL ROAD**
**WILLIAMSVILLE, NY 14221**

**and**

**CLOVER MANAGEMENT, INC.**
**ATTN: C T CORPORATION SYSTEM**
**28 LIBERTY STREET**
**NEW YORK, NY, 10005**

**and**

**CLOVER COMMUNITIES**
**MIAMISBURG, LLC DBA SYCAMORE**
**CREEK SENIOR APARTMENTS**
**ATTN: Clover Communities Parma LLC**
**11500 HUFFMAN ROAD**
**PARMA, OHIO 44130**

**and**

**CLOVER COMMUNITIES BEAVERCREEK**
**LLC DBA LAKEVIEW SENIOR**
**APARTMENTS**
**ATTN: CORP. SERVICE CO.**
**3366 RIVERSIDE DRIVE, SUITE 103**
**UPPER ARLINGTON, OHIO 43221**

**JUDGE:**
**CASE No.**

**COMPLAINT**
**JURY TRIAL DEMANDED**

1

**and**                                          :

**CLOVER MANAGEMENT WEST,**                       :
**INC.**
**ATTN: CT CORPORATION SYSTEM**                   :
**4400 EASTON COMMONS WAY, #125**
**COLUMBUS, OHIO 43219**                          :

    **Defendants.**            :

---

## COMPLAINT

Now comes Plaintiff, The Miami Valley Fair Housing Center, Inc., by and through counsel, and hereby states for their complaint the following:

### INTRODUCTION

1. Plaintiff, The Miami Valley Fair Housing Center, Inc. ("MVFHC" or "Plaintiff"), brings this action for declaratory, injunctive, and monetary relief against Clover Group Inc., Clover Management, Inc., Clover Communities Miamisburg, LLC, Clover Communities Beavercreek, LLC, and Clover Management West, Inc., collectively ("Defendants" or "Clover Communities"), for discrimination on the basis of disability (handicap) and race in violation of the federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*, and the fair housing laws of the state of Ohio, Ohio Rev. Code § 4112.02, *et seq*.

2. Defendants denied Plaintiffs and other people with disabilities reserved or designated parking spaces as a reasonable accommodation near the rental units owned and operated by Defendants, Clover Communities. Defendants' representatives routinely tell residents and applicants that the company does not provide designated parking spots at their multi-family, senior living complexes for anyone, including people with disabilities.

3. Defendants discriminate against people with disabilities in the terms and conditions of renting their unit by adding a $25.00 monthly surcharge and fine for units required by many residents

with disabilities: including the option to rent more accessible units or units on the first floor. Residents who cannot afford the increased fees are required to live in a unit that does not meet their disability-related needs. Defendants refuse to make exceptions to the higher rental charge as a reasonable accommodation for people with disabilities.

4. Waiving the monthly rental surcharge for the units would not cause Defendants financial and administrative hardship.

5. Defendants further discriminate against residents and prospective applicants with disabilities by not permitting any applicant to request a reasonable accommodation or modification prior to them becoming a resident and moving into a unit not fit for their disability-related needs. In sum, applicants are forced to apply, pay fees, and pay monthly rent prior to ever knowing if they will have an equal opportunity as non-disabled residents to fully use and enjoy the dwelling.

6. Defendants' policies violate fair housing laws and their rental practices have undue harsh consequences for seniors and persons with disabilities who have routinely been denied the full use and enjoyment of their homes. Defendants' policies have created less accessible housing conditions that undermine the independence, health, and safety of seniors and persons with disabilities.

7. Defendants discriminate in their application process and subject applicants who are Black to different terms and conditions in applying for a unit. Those different terms and conditions make housing unavailable for prospective Black applicants in violation of federal and state fair housing laws.

8. Defendants offer more favorable incentives for White applicants, including free rent, but refuse to offer the same incentives to Black applicants.

**9.** Defendants fail to properly train and supervise their managers, employees, and leasing agents on fair housing practices which leads to discrimination at Defendants' properties because of race and disability.

**10.** Defendants' policies and practices violate the federal fair housing laws, 42 U.S.C. 3601, *et seq.;* and the Ohio Fair Housing Law found at Ohio Rev. Code §4112.02(H), *et seq*.

## PARTIES

**11.** Plaintiff, The Miami Valley Fair Housing Center, Inc., is a private, non-profit corporation, organized under the laws of the State of Ohio. MVFHC is governed by a volunteer board of directors and has a principal place of business in Dayton, Montgomery County, Ohio. The mission of MVFHC is to eliminate housing discrimination and ensure equal housing opportunity for all people in our region, the State of Ohio, and nationally. MVFHC conducts housing discrimination testing to ensure that housing providers are meeting the requirements of all federal, state, and local fair housing laws.

**12.** Defendant, Clover Group Inc. is a for-profit corporation based in Williamsville, New York that owns and manages at least 40 multi-family residential properties targeted at seniors, aged 55 or over. Clover Group Inc. owns and operates properties in New York, Pennsylvania, Indiana, Ohio, Kentucky, and Missouri, including the senior properties at issue in this matter.

**13.** Defendant, Clover Management, Inc. is a real estate development and management company that manages over 6,000 rental units including all of the senior properties at issue in this matter. Upon information and belief, it is incorporated in the state of Delaware and its principal place of business is Williamsville, New York.

**14.** Defendant, Clover Communities Miamisburg, LLC, is a large, sophisticated housing

4

provider incorporated under the laws of the State of Ohio. Clover Communities Miamisburg, LLC is a subsidiary of Defendant Clover Group, Inc. and Defendant Clover Management, Inc. Clover Communities Miamisburg, LLC along with its parent companies own and/or operate Sycamore Creek Senior Apartments located at 2125 Maue Road, Miamisburg, OH 45342.

15. Defendant, Clover Communities Beavercreek, LLC, is a large, sophisticated housing provider incorporated under the laws of the State of Ohio. Clover Communities Beavercreek, LLC is a subsidiary of Defendant Clover Group, Inc. and Defendant Clover Management, Inc. Clover Communities Beavercreek LLC along with its parent companies own and/or operate Lakeview Senior Apartments located at 2475 Lillian Lane, Beavercreek, OH 45431.

16. Defendant, Clover Management West, Inc., is a real estate management company based out of Columbus, Ohio. Upon information and belief, Defendant Clover Management West, Inc., is a subsidiary of the Defendants and assists in operating, managing, and servicing the properties in dispute.

17. As referenced in this Complaint, Robyn Gunter is a property manager generally for Defendant Clover Communities.

18. As referenced in this Complaint, Heather Osborn is a property manager generally for Defendant Clover Communities.

19. As referenced in this Complaint, "Kimber Ferryman", "Starr Parsons", "Kara", and "Diana" are employees and/or agents of Defendants.

20. In acting or omitting to act as alleged herein, each Defendant acted through its employees, officers, and/or agents and is liable on the basis of the acts and omissions of its employees,

officers, and/or agents.

21. In acting or omitting to act as alleged herein, each employee, officer, or agent of each Defendant was acting in the course and scope of his or her actual or apparent authority pursuant to such agencies, or the alleged acts or omissions of each employee or officer as agent was subsequently ratified and adopted by one or more Defendants as principal.

### JURISDICTION AND VENUE

22. Jurisdiction is appropriate in that this civil action is brought under the Federal Fair Housing Act ("FHA") and Federal Fair Housing Amendments Act ("FHAA"), 42 U.S.C. §§ 3601, *et seq*.

23. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the complaint raises federal questions under the FHA and FHAA. Additionally, this Court has supplemental jurisdiction over related state law claims, Ohio Rev. Code § 4112, *et seq.* (the "Ohio Fair Housing Act"), *et seq*. under 28 U.S.C. § 1367.

24. The Defendants are subject to the jurisdiction of this Court as they are "Persons" under the FHA and Ohio Fair Housing Act, and the acts described herein occurred in Dayton, Ohio, Miamisburg, Ohio, and Beavercreek, Ohio.

25. Defendants conduct business across Ohio, including but not limited to: owning property, managing property, leasing property, and performing contractual obligations in Ohio.

26. Venue is proper in this Court in that the discriminatory acts occurred primarily in Montgomery County, Ohio and Greene County, Ohio.

27. Wherefore, Plaintiff respectfully requests that this Court take jurisdiction of this Complaint and award such relief as is appropriate under the federal and state fair housing laws.

## FACTS

**28.** Plaintiff restates and realleges each and every allegation in Paragraphs 1 through 27 as if fully restated herein.

**29.** Plaintiff conducts testing of housing providers throughout the region to ensure compliance with all fair housing laws governing the housing provider, including federal, state, and local laws and regulations.

**30.** Plaintiff conducted disability and race discrimination testing of two related properties operated under Defendants Clover Group Inc., and Clover Management, Inc., and owned and/or operated by Defendant Clover Communities Miamisburg LLC and Defendant Clover Communities Beavercreek, LLC.

**31.** The properties tested were Clover Communities Miamisburg LLC DBA Sycamore Creek Senior Apartments in Miamisburg, Ohio and Clover Communities Beavercreek LLC DBA Lakeview Senior Apartments in Beavercreek, Ohio.

**32.** Testing evidence provided clear, unambiguous, and demonstrative evidence of discrimination against persons with disabilities regarding requesting and obtaining reasonable accommodations and reasonable modifications, and in subjecting disabled tenants to different terms, conditions, and privileges of renting a unit with Defendants.

**33.** Further testing provided clear, unambiguous, and demonstrative evidence of race discrimination against Blacks compared to White prospective applicants.

**DISABILITY TEST #1 – Reasonable Accommodation Tester**

**34.** The first test ("Test 1") began in February 2022 at Clover Communities Miamisburg LLC d/b/a Sycamore Creek Senior Apartments, owned and/or operated by the Defendants.

**35.** A reasonable accommodation tester ("RA Tester") made contact with Kara from Sycamore

Creek Senior Apartments, who is an employee of the Defendants.

36. The RA Tester indicated to Kara that his wife had a disability and utilized the services of a service animal.

37. The RA Tester visited Sycamore Creek Senior Apartments to tour the facilities.

38. Manager Heather Osborn, an employee of Defendants, greeted the RA Tester and provided the RA Tester with a tour of the premises.

39. Defendants' manager, Heather Osborn, showed the RA Tester unit #324, which was a two bedroom, one bath unit.

40. The RA Tester asked how much rent would be in that unit and Ms. Osborn confirmed that it was more expensive than other units and rented for $1,395 per month.

41. Ms. Osborn confirmed that other units on the second floor and further away from the elevator were rented for a reduced rate of $1,370 per month.

42. The RA Tester then notified Ms. Osborn that his wife was having hip surgery in the near future and used a cane and walker for mobility purposes.

43. The RA Tester asked Ms. Osborn if it would be possible to arrange for a reserved parking spot close to the entrance because walking and mobility was an issue for his wife.

44. Ms. Osborn indicated it probably could not be done but she would call the corporate office and confirm the company policy that parking was "open" and not reserved for anyone.

45. Ms. Osborn from Sycamore Creek Senior Apartments later called the RA Tester and notified the RA Tester that the company's policy regarding parking on all its properties was first come, first served and that a reserved space could only be requested *after* the RA Tester moved in.

46. Ms. Osborn stated it was not guaranteed to be approved but she would provide a form after

the tenant applied, paid the necessary fees, and moved into the unit.

47. The RA Tester had no further contact with the housing provider due to the discriminatory limitations communicated by Defendants.

**DISABILITY TEST #2 – Reasonable Accommodation and Modification Tester**

48. During February 2022, Plaintiff conducted a second test ("Test 2") of the Defendants, Clover Communities.

49. Test 2 was conducted on Defendant Clover Communities Beavercreek, LLC DBA Lakeview Senior Apartments.

50. A Reasonable Accommodations and Modifications Tester ("RAM Tester") called Lakeview Senior Apartments and spoke to property manager Robyn Gunter acting in her employment capacity with Defendants.

51. The RAM Tester notified Ms. Gunter that she used a motorized wheelchair and had accessibility concerns with the apartment after reviewing their virtual tour on the Defendants' corporate website.

52. The RAM Tester notified Ms. Gunter that it appeared the shower stall had a threshold and there was a bump to get over when entering and exiting the shower.

53. Ms. Gunter stated there was a lip at the entrance of the shower based on pictures she had reviewed.

54. The RAM Tester asked if it would be problematic for her to make a modification on the unit to make it a roll-in shower.

55. Ms. Gunter said it could be problematic and informed the RAM Tester that it would have to be done at her own expense and after the proper paperwork was filled out.

56. The RAM Tester asked if they could see the necessary paperwork in advance so they would

know what information was required.

57. Ms. Gunter stated that she could see the paperwork once her application was approved and everything was settled.

58. The RAM Tester then asked if there was designated parking on site.

59. Ms. Gunter stated that there were no reserved spaces, and that parking was first come, first served pursuant to company policy for both disabled and non-disabled residents.

60. The RAM Tester notified Ms. Gunter that she had a minivan with a ramp on the side and asked if she could have a designated space for it that had room for a ramp.

61. Ms. Gunter stated she would have to talk to her district manager to confirm the company's policy on reserving parking spaces.

62. Ms. Gunter stated that once the RAM Tester passed the background and credit check they could look into it further.

63. Subsequently, the RAM Tester contacted Lakeview Senior Apartments and spoke with Ms. Gunter of Defendant Clover Communities Beavercreek, LLC.

64. Ms. Gunter notified the RAM Tester that she had spoken to her district manager and that they could not accommodate a designated parking space pursuant to company policy. Ms. Gunter confirmed that no designated spaces could be given to anyone regardless of their disability status.

65. The RAM Tester again requested pictures of the inside of the apartment, the entrance to the building, and the shower of the unit. The pictures were sent later that day by Ms. Gunter as Property Manager of Lakeview Senior Apartments.

66. After several unanswered phone calls, the RAM Tester sent an email asking how many handicapped parking spaces were in the lot that had ramp space next to them. The RAM

Tester also asked how close the unit would be to the elevator.

67. The RAM Tester stated that based on the photographs it would be necessary for her to modify the shower to make it a roll-in model and asked if that was something the Defendants would definitely allow her to do. She confirmed that she was aware it would be at her own expense.

68. The RAM Tester eventually received an email from Ms. Gunter notifying her that she would have to request a reasonable accommodation and modification after moving into the unit and reiterating that parking spots at Defendants' properties are not assigned regardless of disability status.

69. The RAM Tester replied to the email notifying Defendants that she understood the procedures at the apartment complex but she further communicated that she did not want to put herself in the position of having applied for an apartment, signed a lease, and moved into an apartment where she did not have appropriate access to bathing and parking.

70. The RAM Tester asked if there was any way she could get additional information about whether the modifications would be approved without applying for an apartment, signing a lease, paying fees, and moving into a unit that was not accessible or equipped for persons with disabilities.

71. The RAM Tester received an email from Defendants, and in particular Ms. Gunter, stating that, "I checked with corporate and unfortunately you have to be a resident PRIOR to submitting the Reasonable Accommodation paperwork. It just isn't feasible to submit Reasonable Accommodation paperwork for every prospect that was curious as to if changes 'could' be made or not prior to moving in."

72. The RAM Tester had no further contact with the housing provider due to the discriminatory

preference or limitation which was communicated by Defendants.

**DISABILITY TEST #3 – Reasonable Accommodation Tester**

73. Plaintiff conducted a third disability test ("Test 3") in March 2023 at Sycamore Creek Apartments, located at 2125 Maue Road, Miamisburg, OH 45342, and owned, operated, and managed by Defendants.

74. During Test 3, Defendants' leasing agent named Diana was notified that Plaintiff's tester has a service animal.

75. Plaintiff's tester also notified Defendants that her disability was obvious because she utilizes a motorized wheelchair.

76. Plaintiff's tester requested that her service animal be approved.

77. Diana notified the reasonable accommodation tester that she would have to apply for an apartment and be approved for that prior to providing documentation for the service animal.

78. Plaintiff's reasonable accommodation tester notified Defendants that it would be difficult to apply for a unit without having additional information about whether her accommodation would be granted and what information was required regarding the requested accommodation.

79. Eventually Defendant, by and through property manager Starr Parsons, notified the reasonable accommodation tester that she could apply for the reasonable accommodation concurrently with the application; however, the tester would have to provide a doctor's note despite the disability being readily apparent.

80. Plaintiff was never notified that a doctor's note would not be required for an obvious and readily apparent disability.

81. Plaintiff's tester had no further contact with Defendants because of the overly restrictive

policies of the Defendants.

**DISABILITY TEST #4 – Reasonable Accommodation and Modification Tester**

82. In April 2023, Plaintiff conducted a disability discrimination test ("Test 4") at Lakeview Senior Apartments, located at 2475 Lillian Lane, Beavercreek, OH 45431, owned, operated, and managed by Defendants.

83. During Test 4, Defendants' leasing agent and/or property manager named Kimber was notified that Plaintiff's tester had a companion animal and utilized a wheelchair for mobility issues.

84. Plaintiff's tester requested information regarding the companion animal policy.

85. Plaintiff's tester was notified that a doctor's note was required and the fee would be determined after reviewing the doctor's language in the letter.

86. Plaintiff's tester also requested information about making the shower wheelchair accessible.

87. Plaintiff specifically requested that the shower be made accessible for entering and exiting the shower with a wheelchair.

88. Defendants' manager was unfamiliar with the process for applying for reasonable accommodations and modifications.

89. Defendants provided a reasonable accommodation form to remove the shower door but otherwise failed to address the other issues making the shower wheelchair inaccessible.

90. Defendants improper training and supervision of its employee led to a significant delay in receiving a reasonable accommodation form and made housing unavailable for the prospective applicant.

**DISABILITY DISCRIMINATION TESTING EVIDENCE**

91. Testing evidence indicates that Defendants have companywide policies that prevent prospective applicants with disabilities from making reasonable accommodation or reasonable modification requests prior to a tenancy approval, leaving such applicants unable to assess whether they will be able to fully use and enjoy an apartment until after completing an application, committing to a lease, paying fees, and moving into the unit.

92. Testing evidence also indicates that Defendants increase rent based on proximity to the elevator and the denial of reasonable accommodation requests for reserved parking spaces and access aisles have a discriminatory effect on people with mobility disabilities.

93. Defendants intentionally discriminate against residents and prospective residents on the basis of disability in the terms and conditions of renting a unit by requiring additional fees based on proximity to elevators or residing on the first floor, and in failing to grant reasonable accommodations and modifications under the FHA, FHAA, and Ohio Fair Housing Law.

94. Defendants negligently train and supervise their employees and leasing agents which results in violations of the federal and state fair housing laws on the basis of disability as described herein.

**RACE DISCRIMINATION TEST #1**

95. In February 2023, Plaintiff conducted a race discrimination test at Sycamore Creek Apartments, located at 2125 Maue Road, Miamisburg, OH 45342, and owned, operated, and managed by Defendants.

96. Plaintiff arranged for a White prospective applicant and Black prospective applicant to tour Defendant's Sycamore Creek Apartment facilities located at 2125 Maue Road, Miamisburg, OH 45342.

97. Plaintiffs' testers sought information from Defendants on identical units.

98. During the tour, the Black prospective tenant was told there was one unit available whereas the White prospective tenant was told three units were available.

99. Defendants provided additional information during the visit to the White tester compared to information furnished to the Black tester which incentivized the White tester to apply for the unit.

100. After the tour, the Black tester received one follow up email whereas the White tester received three follow up phone calls.

101. Such disparities in the visit and application process constitute different terms and conditions in applying for a unit and made housing unavailable for the Black tester.

**RACE DISCRIMINATION TEST #2**

102. In March 2023, Plaintiff conducted a race discrimination test at Lakeview Senior Apartments, located at 2475 Lillian Lane, Beavercreek, OH 45431, owned, operated, and managed by Defendants.

103. Plaintiff arranged for a White prospective applicant and Black prospective applicant to tour Defendant's Lakeview Senior Apartment facilities located at 2475 Lillian Lane, Beavercreek, Ohio.

104. Plaintiffs' testers sought information from Defendants on identical units.

105. During and after the site visit, Defendants offered the White prospective tenant a free month of rent to apply for a unit.

106. Defendants did not offer the same free month of rent to the Black prospective applicant.

107. Such refusal to offer the same terms and conditions constitutes a direct violation of the federal Fair Housing Act and Ohio Rev. Code § 4112(H).

**108.** Defendants' actions made housing unavailable for the Black prospective applicant.

**RACE DISCRIMINATION TEST #3**

**109.** In April 2023, Plaintiff conducted a subsequent race discrimination test at Lakeview Senior Apartments, located at 2475 Lillian Lane, Beavercreek, OH 45431, owned, operated, and managed by Defendants.

**110.** Plaintiff arranged for a White prospective applicant and Black prospective applicant to tour Defendant's Lakeview Senior Apartment facilities located at 2475 Lillian Lane, Beavercreek, Ohio.

**111.** Plaintiff's testers again sought information from Defendants on identical units.

**112.** During and after the site visit, Defendants offered the White prospective applicant a free month of rent to apply for a unit.

**113.** Defendants did not offer the same free month of rent to the Black prospective applicant.

**114.** Such refusal to offer the same terms and conditions constitutes a direct violation of the federal Fair Housing Act and Ohio Rev. Code § 4112(H).

**115.** Defendants' actions made housing unavailable for the Black prospective applicant.

**RACE DISCRIMINATION TESTING EVIDENCE**

**116.** Testing evidence indicates that Defendants intentionally discriminate against Black applicants by offering less favorable terms and conditions when compared to White applicants.

**117.** Testing evidence also indicates that Defendants leasing practices lead to a refusal to rent to Blacks and otherwise make housing unavailable.

**118.** Testing evidence further indicates that Defendants provide additional information to White applicants compared to Black applicants to incentivize such White applicants to

16

apply for a unit.

119. Defendants negligently train and supervise their employees on non-discrimination which results in fair housing violations during the leasing process, including offering more favorable terms and conditions to White applicants such as one month of free rent which is not offered to Black applicants.

**INJURY TO PLAINTIFF**

120. As referenced herein, Plaintiff, through its testers, requested reasonable accommodations to Defendants' parking policy prior to applying, paying fees, and moving into a unit which was reasonable and necessary.

121. Defendants denied the request and informed Plaintiff that it was first come, first served, even for persons with disabilities and mobility impairments.

122. As referenced herein, Plaintiff, through its testers, requested a reasonable modification and was told no reasonable modification could be granted prior to applying for a unit, paying a fee, moving into the unit, and then applying for such a request although Plaintiff would already be put into a position of not receiving fair and equal use of the dwelling as non-disabled residents by being forced to move into a non-accessible unit.

123. Plaintiff's request for a reasonable modification was clearly and unambiguously denied.

124. Plaintiff's testers were subjected to different terms and conditions in renting a dwelling by being told they would pay a $25 surcharge and fine for more accessible units, and by having to be subjected to different terms and conditions in renting a unit that was not accessible at move-in.

125. Plaintiff's testers were subjected to different terms and conditions in applying for a unit when White testers were provided one-month free rent and Black testers were not provided

one-month free rent.

126. Plaintiff was subjected to different terms and conditions in applying for a unit when White testers were provided additional information on available units compared to Black testers.

127. Defendants refused to rent or negotiate in good faith with Black applicants which made housing unavailable based on race.

128. Defendants' actions as described herein made housing otherwise unavailable for prospective applicants based on race and disability.

129. Defendants' actions as described herein limit housing choice for Black applicants and persons with disabilities in violation of the state and federal fair housing laws.

130. As a direct, proximate, and foreseeable result of Defendants' actions as described herein, Plaintiff, MVFHC, has suffered, continues to suffer, and will in the future suffer substantial, particularized, and concrete injuries.

131. Defendants' unlawful conduct, policies, and practices have frustrated and impaired MVFHC's mission and purpose, forced them to drain their limited and scarce resources, and interfered with their ability to operate.

132. Defendants' conduct frustrated Plaintiff's mission by interfering with their mission-related activities, impairing their ability to achieve their goals of ensuring equal and fair access to housing opportunities, and harming their community.

133. Defendants' discriminatory conduct has forced and required Plaintiff to engage in numerous activities to identify and counteract the Defendants' unlawful conduct, policies, and practices, in order to protect residents from unlawful housing discrimination.

134. Plaintiff, The Miami Valley Fair Housing Center, Inc., has conducted extensive

investigations of race and disability-related issues at Defendants' properties for over a year.

135. The investigations included pre-testing research, site visits, testing on multiple occasions, education and outreach, post-testing research, and extensive discussions with testers and staff to resolve and ameliorate the discriminatory housing policies, practices, and services of Defendants.

136. Plaintiff's diversion of time and resources to address Defendant's discriminatory conduct has forced MVFHC to suspend other projects that would have furthered its mission, including: conducting training sessions, investigation of other housing providers, missed speaking engagements, delaying its Analysis of Impediments to Fair Housing Study in Montgomery County, Ohio, and other testing-related activity.

137. Plaintiff will continue to divert its scarce resources and have its mission frustrated until Defendants' discriminatory conduct ceases and the harms caused by Defendants on residents and prospective residents are remedied and resolved.

## CAUSES OF ACTION

## COUNT I: VIOLATION OF THE FAIR HOUSING ACT OF 1968, as amended

## 42 U.S.C. § 3601, *et seq.* (Disability Discrimination)

138. Plaintiff restates and realleges each and every allegation in Paragraphs 1 through 137 as if fully restated herein.

139. Plaintiffs' requests for reasonable accommodations and modifications were reasonable and necessary.

140. Defendants' conduct as described in this Complaint constitutes a refusal to make reasonable accommodations in rules, policies, practices, or services when such an accommodation may be necessary to afford a person with a disability an opportunity to use

and enjoy a dwelling in violation of 42 U.S.C §§ 3604(f)(1); 3604(f)(2); and 3604(f)(3)(B).

141. Defendants' conduct as described in this Complaint constitutes discrimination against the Plaintiff in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of the disability of a person residing in or intending to reside in a dwelling, including through the refusal to make reasonable accommodations, in violation of 42 U.S.C. §§ 3604(f)(1); 3604(f)(2); and 3604(f)(3)(B).

142. Defendants' conduct as described in this Complaint constitutes a refusal to permit, at the expense of the disabled person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises except that, in the case of a rental, the landlord may where it is reasonable to do so condition permission for a modification on the renter agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted, in violation of 42 U.S.C. §§ 3604(f)(1); 3604(f)(2); and 3604(f)(3)(A).

143. Defendants' conduct as described in this Complaint constitutes discriminatory statements that indicate a preference, limitation, or discrimination based on disability in violation of 42 U.S.C. § 3604(c).

144. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has suffered damages and are aggrieved persons, as defined in 42 U.S.C. § 3602(i).

145. There are no valid or legitimate reasons for denying reasonable accommodation and modification requests, or charging additional fees and fines for having accessible units.

146. Wherefore, Plaintiff requests compensatory and punitive damages in excess of $25,000,

together with costs and reasonable attorney fees, in an amount to be determined at trial.

## COUNT II: VIOLATION OF THE OHIO CIVIL RIGHTS ACT

## OHIO REV. CODE § 4112.02(H), *et seq.* (Disability Discrimination)

**147.** Plaintiff restates and realleges each and every allegation in Paragraphs 1 through 146 as if fully restated herein.

**148.** Plaintiff's requests for reasonable accommodations and modifications were both reasonable and necessary.

**149.** Defendants' conduct as described in this Complaint constitutes a refusal to make reasonable accommodations in rules, policies, practices or services when necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling, in violation of Ohio Rev. Code §§ 4112.02(H)(15) and 4112.02(H)(19).

**150.** Defendants' conduct as described in this Complaint constitutes an unlawful refusal to rent, denial or withholding of a housing accommodation because of disability in violation of Ohio Rev. Code § 4112.02(H)(4).

**151.** Defendants' conduct as described in this Complaint constitutes discrimination in the terms, conditions, or privileges of the rental of dwellings, or in the provision of services or facilities in connection therewith because of disability in violation of Ohio Rev. Code § 4112.02(H)(16).

**152.** Defendants' conduct in this Complaint constitutes discriminatory statements that indicate any preference, limitation, specification, or discrimination based on disability with respect to a housing accommodation in violation of Ohio Revised Code § 4112.02(H)(7).

**153.** As a result of Defendants' discriminatory conduct, Plaintiffs have suffered damages and are aggrieved persons, as defined in Ohio Rev. Code § 4112.051.

**154.** There are no valid or legitimate reasons for denying reasonable accommodation and modification requests, or charging additional fees and fines for having accessible units.

**155.** Wherefore, Plaintiff requests compensatory and punitive damages in excess of $25,000, together with costs and reasonable attorney fees, in an amount to be determined at trial.

## COUNT III - VIOLATION OF THE FAIR HOUSING ACT OF 1968, as amended

### 42 U.S.C. § 3601, *et seq.* (Race Discrimination)

**156.** Plaintiff restates and realleges each and every allegation in Paragraphs 1 through 155 as if fully restated herein.

**157.** Defendants' conduct as described in this Complaint constitutes discrimination against the Plaintiff in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, on the basis of race in violation of 42 U.S.C. § 3604(b).

**158.** Defendants conduct as described in this Complaint constitutes discrimination against Plaintiff by failing or refusing to negotiate or otherwise making housing unavailable on the basis of race in violation of 42 U.S.C. § 3604(a).

**159.** As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has suffered damages and are aggrieved persons, as defined in 42 U.S.C. § 3602(i).

**160.** Wherefore, Plaintiff requests compensatory and punitive damages in excess of $25,000, together with costs and reasonable attorney fees, in an amount to be determined at trial.

## COUNT IV - VIOLATION OF THE OHIO CIVIL RIGHTS ACT

### OHIO REV. CODE § 4112.02(H), *et seq.* (Race Discrimination)

**161.** Plaintiff restates and realleges each and every allegation in Paragraphs 1 through 160 as if fully restated herein.

**162.** Defendants' conduct as described in this Complaint constitutes discrimination against the Plaintiff in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, on the basis of race in violation of Ohio Rev. Code § 4112.02(H)(4).

**163.** Defendants' conduct as described in this Complaint constitutes discrimination against Plaintiff by failing or refusing to negotiate or otherwise making housing unavailable on the basis of race in violation of Ohio Rev. Code § 4112.02(H)(1).

**164.** As a result of Defendants' discriminatory conduct, Plaintiffs have suffered damages and are aggrieved persons, as defined in Ohio Rev. Code § 4112.051.

**165.** Wherefore, Plaintiff requests compensatory and punitive damages in excess of $25,000, together with costs and reasonable attorney fees, in an amount to be determined at trial.

## COUNT V – NEGLIGENT TRAINING AND SUPERVISION

**166.** Plaintiff restates and realleges each and every allegation in Paragraphs 1 through 165 as if fully restated herein.

**167.** Defendants owed a duty of care to properly train and supervise its employees, including its property managers and leasing agents at its Beavercreek, Ohio and Miamisburg, Ohio apartments, respectively, on fair housing laws and non-discriminatory practices.

**168.** Defendants breached their duty of care by negligently providing inadequate training and failing to supervise its property managers and leasing agents.

**169.** As a direct and proximate result of Defendants' negligent training and supervision, Plaintiff suffered harm in the form of unfair and discriminatory treatment during the application process.

**170.** Plaintiff was injured by Defendants' actions as described herein and diverted its scarce

resources and had its mission frustrated by Defendants' discriminatory conduct as described herein.

**171.** Wherefore, Plaintiff requests compensatory and punitive damages in excess of $25,000, together with costs and reasonable attorney fees, in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, due to Defendants' discriminatory conduct as described herein, Plaintiffs respectfully requests that this Court grant judgment in its favor, and against Defendants, as follows:

**A.** Declaring that Defendants' actions violate the Federal Fair Housing Act, 42 U.S.C. § 3601, *et seq*., and Ohio Rev. Code § 4112.02, *et seq.*;

**B.** Permanently enjoining Defendants from engaging in the conduct described herein and directing Defendants to take all affirmative steps necessary to remedy the effects of the conduct described herein and to prevent additional instances of such conduct or similar conduct from occurring in the future;

**C.** Awarding compensatory and punitive damages in an amount in excess of $25,000 together with costs and reasonable attorney fees pursuant to 42 U.S.C. § 3613(c).

**D.** Mandate that the Defendants and all of their agents and employees receive training fair housing laws; and

**E.** Grant such additional legal and equitable relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury on all issues triable as of right.


Respectfully submitted,


*/s/ C. Jacob Davis*

_____
C. Jacob Davis (#0101745)
Nalls Davis
33 White Allen Avenue
Dayton, Ohio 45405
Phone: (937) 813-3003
Fax: (937) 200-7285
Jacob.Davis@nallslaw.com
Attorney for Plaintiff, The Miami Valley
Fair Housing Center, Inc.


**DATED:** June 21, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that service of the Complaint is being made upon Defendants as required by the Federal Rules of Civil Procedure via certified mail, return receipt requested, or another form of proper service at the addresses listed in the caption of this Complaint.

Respectfully submitted,

*/s/ C. Jacob Davis*

_____
C. Jacob Davis (#0101745)
Attorney for Plaintiff